# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BLUEFIELD DIVISION

| | |
|---|---|
| **CORNELIA M. DUNN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 1:05-0012** |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Plaintiff has filed this action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Titles II of the Social Security Act, 42 U.S.C. §§ 401-433 after this Court remanded her initial action (<u>Dunn v. Barnhart</u>, Civil Action 1:01-1306) because the transcript of the administrative hearing was inadequate. (Tr. at 432 - 436.) By Standing Order, this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.) Presently pending before the Court and under the Court's consideration are Plaintiff's Motion to Remand and Memorandum in Support (Document No. 11.) and Defendant's Motion for Judgment on the Pleadings and Memorandum in Support. (Document Nos. 12 and 13.)

The Plaintiff, Cornelia M. Dunn (hereinafter referred to as "Claimant"), protectively filed an application for DIB on March 5, 1996, alleging disability as of October 31, 1994, due to "arthritis in all joints. Broken collar bone in 1994. I have a lot of pain in right shoulder and neck." (Tr. at 49, 179, 184.) The claim was denied initially and upon reconsideration. (Tr. at 153 - 157, 160 - 162.) On October 10, 1996, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 163.) A hearing was held on March 21, 1997, before the Honorable Alfred J. Costanzo. (Tr. at 369

- 415.) ALJ Costanzo issued a Decision dated May 14, 1997. (Tr. at 38 - 47.) ALJ Costanzo determined that Claimant met the disability insured status requirement of the Act on October 31, 1994, and would continue to do so through at least December 31, 1999. (Tr. at 46, Finding No. 1.) The ALJ found that Claimant had not engaged in substantial gainful activity since October 31, 1994. (Id., Finding No. 2.) ALJ Costanzo found that Claimant had "degenerative joint disease, fibromyalgia, hypothyroidism and hypolipidemia, impairments which are severe but which do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."[1] (Id., Finding No. 3.) ALJ Costanzo stated that "claimant lacks the residual functional capacity to lift and carry more than ten pounds (15 pounds occasionally); stand for longer than ten minutes at a time; sit or stand for prolonged periods without frequently alternating positions at her own discretion; push or pull with the upper and lower extremities; reach overhead; perform repetitive power grasping with her hands; or work in exposure to heights and moving machinery." (Id., Finding No. 5.) Thus, ALJ Costanzo found Claimant incapable of performing her past relevant work as a sewing machine operator and the full range of sedentary work. (Id., Finding Nos. 6 and 7.) Based upon testimony of a vocational expert, ALJ Costanzo found that "[a]lthough the claimant is unable to perform the full range of sedentary work, she is capable of making an adjustment to work which exists in significant numbers in the national economy. Such work includes employment as a cashier, a jewelry inspector and an order clerk. A finding of 'not disabled' is therefore reached within the framework of the above-cited rule." (Tr. at 47, Finding No. 12.) Claimant requested review of the hearing decision and submitted further evidence. (Tr. at 53 - 54.) On June 21, 1999,

---

[1] Fibromyalgia is a condition the cause of which has yet to be determined though there are many theories. It is characterized by aching and pain in the muscles, tendons and joints all over the body, especially along the spine. It is indicated by specific "tender" points and is often accompanied by sleep disturbance, fatigue, depression, dizziness and memory problems. It is treated with medications which decrease pain and improve sleep, exercise and stress reduction and relaxation techniques.

the Appeals Council vacated ALJ Costanzo's Decision and remanded the case to the ALJ in view of new and material evidence.[2] (Tr. at 55 - 57.) The Appeals Council stated that the ALJ was to resolve the following issue:

> Evidence submitted in connection with the request for review indicates that the claimant has previously undergone psychiatric care, and she has a history of episodic depression. In addition, the additional evidence includes a mental status examination in which the consultant psychiatrist reports that the claimant has a significant amount of anxiety associated with depression. He diagnosed Major Depression, recurrent moderate, Generalized Anxiety Disorder, and Panic Attacks with Agoraphobia. Further consideration of the claimant's mental impairment and of the claimant's residual functional capacity is needed to clarify whether the claimant's ability to do sedentary work activity has been significantly eroded by his [sic] depression.

(Tr. at 56 (Reference to exhibit omitted.).) The Appeals Council further required as follows:

> Upon remand, the Administrative Law Judge will:
>
> • Consider the additional evidence submitted in support of the request for review.
>
> • Obtain additional evidence concerning the claimant's mental impairment in order to complete the administrative record in accordance with regulatory standards concerning consultative examinations and existing medical evidence . . .. The additional evidence may include, if warranted and available, a consultative mental status examination with psychological testing and medical source statements about what the claimant can still do despite the impairments.
>
> • Evaluate the claimant's mental impairments and complete a Psychiatric

---

[2] 20 C.F.R § 404.977(a) provides as follows respecting when the Appeals Council may remand a case:

> The Appeals Council may remand a case to an administrative law judge so that he or she may hold a hearing and issue a decision or a recommended decision. The Appeals Council may also remand a case in which additional evidence is needed or additional action by the administrative law judge is required.

The Appeals Council may affirm, modify or reverse the administrative law judge hearing decision after reviewing all of the evidence in the administrative law judge hearing record and any addition evidence received. 20 C.F.R § 404.979.

3

>      Review Technique Form . . ..
>
> •    Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations . . ..
>
> •    If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base . . .. The hypothetical question should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy.

(Tr. at 56 - 57.) A further hearing was held on November 9, 1999, before the Honorable Richard Pietrowicz. (Tr. at 307 - 368.) By Decision dated March 21, 2000, ALJ Pietrowicz determined that Claimant was not entitled to benefits. (Tr. at 17 - 35.) ALJ Pietrowicz found that "[t]he evidence supports a finding that the claimant has hypertension, the residual effects of a right clavicle fracture in 1994, fibromyalgia and depression, medically determinable impairments that more than minimally impact her functional capabilities and are severe . . .."  (Tr. at 19.) The ALJ determined that "[t]he claimant retains the residual functional capacity for work at all exertional levels, limited to tasks that allow for alternate sitting and standing, do not require overhead lifting with the right arm and involve only simple, repetitive activities." (Tr. at 24, Finding No. 6.) ALJ Pietrowicz concluded as ALJ Costanzo did that Claimant could not perform her past relevant work but could perform jobs which existed in the national economy such as cashier, jewelry inspector and order clerk. (Id., Finding Nos. 7 and 11.) The ALJ's Decision became the final decision of the Commissioner on November 7, 2001, when the Appeals Council denied Claimant's request for review.  (Tr. at 10 - 11.) Claimant sought review in this Court initiating Dunn v. Barnhart, Civil Action 1:01-1306, on December 26, 2001. By Order filed in that matter on February 19, 2003, this Court remanded the case to Defendant because the transcript of the administrative hearing was inadequate. (Tr. at 432 - 436.) ALJ Pietrowicz held a hearing on February 3, 2004. (Tr. at 627 - 638.) A record was made of

the opinions of vocational expert Robert Jackson. ALJ Pietrowicz held a further hearing on September 18, 2003. (Tr. at 639 - 684.) Claimant and her long-time friend testified. By Decision dated February 27, 2004, the ALJ determined that Claimant was not entitled to disability benefits. (Tr. at 421 - 431.) The ALJ incorporated by reference his summarizations of medical and vocational evidence but not the findings or ultimate conclusions contained in his March 21, 2000, Decision. (Tr. at 424.) The ALJ found that Claimant met the disability insured status requirements of the Act through December 31, 1999. (Tr. at 429, Finding No. 1.) The ALJ determined that Claimant satisfied the first inquiry in the sequential analysis because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 429, Finding No. 2.) Under the second and third inquiries, the ALJ found that the evidence established that Claimant had hypertension,, residual effects of a right clavicle fracture in 1994, a fibromyalgia-like condition and depression, conditions which were "severe" within the meaning of the Act but did not constitute an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. at 426, 330, Finding Nos. 3 and 4.) The ALJ then found as follows respecting Claimant's residual functional capacity:

> She was able to attend to tasks at work station as required but only if allowed to change positions while working, such as to stand up and stretch, without leaving the workstation; she was unable to do overhead lifting; she was able to perform no more than simple repetitive tasks; and she was able to work only in a non-hazardous environment.

(Tr. at 430, Finding No. 6.) The ALJ also found that Claimant had no exertional limitations. (Tr. at 430, Finding No. 13.) At the fourth step in the sequential analysis, the ALJ determined that Claimant was unable to perform her past relevant work. (Tr. at 430, Finding No. 7.) The ALJ determined that Claimant was a younger person at her date last insured for benefits, had a limited education and had no transferable skills. (Tr. at 430, Finding Nos. 7 - 9.) The ALJ concluded based upon the testimony of a vocational expert that jobs existed in significant numbers in the regional and national economies

which Claimant could perform including cashier, general production laborer and information clerk. (Tr. at 330, Finding No. 11.) On this basis, the ALJ found that "[t]he claimant was not under a 'disability,' as defined in the Social Security Act, at any time through her date last insured for benefits of December 31, 1999." (Tr. at 330, Finding No. 12.) The ALJ's Decision became the final decision of the Commissioner on November 9, 2004, when the Appeals Council refused to assume jurisdiction and notified Claimant of her right to seek relief in the District Court. (Tr. at 416 - 418.) On January 6, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner,

McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2002).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.  Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

Claimant's Background

Claimant was born on August 9, 1951, and was 48 years old on December 31, 1999, when her disability insured status expired. (Tr. at 179.) Claimant has a tenth grade education. (Tr. at 373.)

In the past, Claimant operated sewing machines in the production of clothing. (Tr. at 192 - 194.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence, and will discuss it further below as necessary.

Claimant's Challenges to the Commissioner's Decision and Defendant's Responses.

Claimant raises the following issues in seeking a remand of this case:

1. Did the ALJ err in failing to take additional testimony in the hearing ordered by remand?

2. Should the plaintiff have been found disabled on the date of her 50th birthday according to the Social Security Regulations?

(Document No. 11, p. 2.) Respecting the first issue, Claimant refers to the Appeals Council's June 21, 1999, remand for consideration of evidence of Claimant's mental impairment. (Id., pp. 2 - 3.) Claimant then refers to the hearing on September 18, 2003, stating that "no new evidence was cited from either treating physician." (Id., p. 3.) Claimant then refers to the ALJ's February 27, 2004, Decision and asserts that "the presiding ALJ was acting as an expert to discount findings from either treating sources or an examining expert." (Id.) Claimant contends further that "the presiding ALJ without having contradictory psychiatric information chose to 'discount' treating sources and examining psychiatrists' opinions because he as a lay person doubted their methodology." (Id.) In conclusion, Claimant states that "the presiding ALJ did not follow the remand because the presiding ALJ failed to consider additional evidence and he failed to obtain additional evidence concerning the claimant's mental impairment that would support his conclusion." (Id.) Respecting the second issue, Claimant appears to contend that ALJ Pietrowicz was bound by the March 14, 1997, finding of ALJ Costanzo that Claimant was capable of performing less than the normal range of sedentary

work. Claimant asserts that "the later decision is barred by res judicata under Drummond v. Commissioner of Social Security, 126 F.3d 837, 54 Soc.Sec.Rep.Serv. 269 (1997)." (Id., p. 4.) It appears therefore that Claimant argues that ALJ Pietrowicz erred as a matter of law in finding that Claimant had no exertional limitations. (Id.) Claimant then points out that while ALJ Pietrowicz found that Claimant had no exertional limitations, the vocational expert identified jobs at the medium and sedentary exertional levels which she could perform. (Id., pp. 4 - 5.) Claimant contends that "[t]he other argument which is implied is that the presiding ALJ and the vocational expert contradict themselves." (Id., p. 5.)

Defendant summarizes the medical evidence preceding and following the Appeals Council's remand and after the Court's remand (Document No. 12, pp. 7 - 10.) and contends that (1) Claimant did not establish disability under the Act and (2) substantial evidence supported the ALJ's decision that Claimant was not under a disability as defined by the Act.

## ANALYSIS

**1.     The ALJ's Compliance With the Appeals Council's Remand Order.**

By its June 21, 1999, remand order, the Appeals Council required that the ALJ consider the evidence of Claimant's mental condition and obtain additional evidence and a consultative mental status examination, if appropriate. The Appeals Council required that the ALJ then consider the evidence in the performance of the five-step sequential analysis by evaluating it and completing a Psychiatric Review Technique Form, considering Claimant's residual functional capacity and consulting a vocational expert, if appropriate. (Tr. at 56 - 57.)[3]

---

[3] The ALJ has a responsibility to help develop the evidence. See Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). It is Claimant's responsibility to prove to the Commissioner that she is disabled. 20 C.F.R. § 416.912(a) (2002). Thus, Claimant is responsible for providing medical

9

ALJ Pietrowicz stated as follows in his March 21, 2000, Decision respecting evidence of Claimant's mental impairment:

> On March 11, 1998, Harry P. Kornhiser, D.O., a consultant psychiatrist, performed a psychiatric evaluation of the claimant. His report of that evaluation submitted by the claimant's counsel. Dr. Kornhiser diagnosed the claimant as having recurrent, moderate major depression; a generalized anxiety disorder; and panic attacks with agoraphobia. The medical opinion of Dr. Kornhiser, who had not regularly treated the claimant earlier, is given little weight because his opinions are not supported by objective medical evidence and are contradicted by the opinions of other specialists in the field of mental health who examined the claimant.
>
> * * *
>
> On July, 28, 1999, Dr. Kornhiser submitted more records of office notes and lists of symptoms, but he would not complete a Medical Assessment of Ability To do Work-Related Activities (Mental).

(Tr. at 20 (References to Exhibits omitted).) The ALJ mentioned that Claimant testified that she took Elavil three times a week for her depression (Tr. at 21.) and related the opinions of Dr. Scharf, her treating psychiatrist in 1999, as follows (Tr. at 22.):

> With respect to her psychiatric impairment, Charles Scharf, M.D., reported . . . from September 1998 through May 1999, that although the claimant suffered from major depression and fibromyalgia, 'she has been doing well taking Effexor 450 mg XR daily. No side effects are elicited from the medication. She is calm, friendly and cooperative.'
>
> * * *
>
> Little additional evidence of the claimant's 'major depression' has been received (despite efforts by both the Office of Hearings and Appeals and the claimant's counsel) and the last report from Dr. Scharf dated December 2, 1999, notes that she has 'had depression on and off for years' for which 'she has been treated on and off for years.' Dr. Scharf also diagnoses 'dysthymia' and 'fibromyalgia' and points to 'moderate phychosocial stressors including medical and financial.'

---

evidence to the Commissioner showing that she has an impairment. Id. § 416.912(c). Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). It appears that Claimant has been represented by counsel in this case throughout the administrative proceedings. Additionally, the Regulations state that the ALJ has discretion in deciding whether to order a consultative examination. 20 C.F.R. §§ 404.1519a, 416.919a (2002). The Regulations further provide that a consultative examination is required when the evidence as a whole is insufficient to support a decision. See id.

10

The ALJ attached a Psychiatric Review Technique Form to his Decision (Tr. at 26 - 33.) He determined that the evidence indicated that Claimant had an affective disorder (dysthymia) which caused slight restrictions of activities of daily living and difficulties in maintaining social functioning, seldom caused deficiencies in concentration, persistence or pace and resulted in one or two episodes of deterioration or decompensation in work or work-like settings.

In his February 27, 2004, Decision, ALJ Pietrowicz further discussed evidence of Claimant's mental impairment as follows (Tr. at 426 - 427.):

> The Administrative Law Judge notes that the arguments made in the prior decision of March 21, 2000, are still valid to show that the claimant does not have a listing-level impairment. Furthermore, although the reports from the Bluefield Mental Health Center and examining psychiatrist Riaz Uddin Riaz, M.D., would indicate that the claimant had a listing-level impairment as of September 26, 2003, nothing in the record indicates that this level of impairment can be related back to the time when the claimant remained insured for disability benefits. Also, the reports from the Blue Ridge Mental Health are seen to fully credit everything that the claimant reports without significant criticism or analysis of the likely truth of the claimant's reports of symptoms and limitations. Based upon the contemporary evidence of the claimant's activities and of medical assessments as found in the record, the Administrative Law Judge concludes that at the claimant's date last insured for disability benefits she had dysthymia associated with mild restriction of the activities of daily living, mild difficulties in maintaining social functioning, mild deficiencies of concentration, persistence or pace, and a history of one or two episodes of deterioration or decompensation in work or work-like settings. These conclusions are based upon the reports of Dr. Charles Scharf, M.D., in May 1999, and the claimant's testimony in the February 2000 hearing that she took Elavil medication only three times per week for her depression. This evidence is discussed in the March 2000 Decision.

Based upon the evidence of record respecting Claimant's mental condition, the ALJ determined that prior to the time when her insured status lapsed, December 31, 1999, Claimant suffered from depression which he regarded as severe. (Tr. at 426.) The ALJ correctly referenced statements of Dr. Scharf in a May 27, 1999, progress note and a December 2, 1999, Psychiatric Evaluation. (Tr.

at 91, 149.) The undersigned notes that Dr. Scharf had seen Claimant for several months prior to May, 1999, and had increased his prescribed dosage of Effexor with some positive results. (Tr. at 92 - 96.) Dr. Scharf stated in his May 27, 1999, Progress note that "[s]he states that the Effexor has worked better than any other medication she has taken for depression." (Tr. at 91.) Dr. Scharf stated that I will see her for reassessment in eight weeks." (Id.) It appears that Claimant did not return to him until December, 1999. In his December 2, 1999, evaluation, Dr. Scharf states that "the Effexor did not seem [to] help" and indicated that he would prescribe Remeron. (Tr. at 150.) He stated that he would see Claimant again in two weeks (Id.) It appears that Claimant did not return to Dr. Scharf but went to Dr. Riaz Uddin Riaz in April, 2000, and Dr Riaz prescribed Wellbutrin and Xanax, anti-depressant and panic disorder medications. (Tr. at 300.)

Having thoroughly examined the record, the undersigned finds that ALJ Pietrowicz properly relied upon the evidence as discussed above bearing upon Claimant's mental impairment prior to the date when she last had insured status, December 31, 1999. The ALJ did not reject the evidence in favor of his own opinion respecting Claimant's mental impairment. Rather, he considered and weighed the evidence as it was relevant to Claimant's mental impairment during the period she had insured status. The undersigned further finds that the ALJ factored his determination that Claimant had mild or moderate restrictions as a consequence of her depression into his step four and step five analysis. He asked the vocational expert to assume "a problem with pace, consistence and concentration." (Tr. at 634.) He found that Claimant was capable of performing only simple repetitive tasks. The ALJ's findings and the vocational expert's testimony are not inconsistent or contradictory as Claimant indicates. The relevant evidence was sufficient as a basis for the ALJ's decision, and therefore, it was unnecessary for the ALJ to further develop the record. Finally, the

undersigned finds that the ALJ's findings are amply supported by the relevant evidence of record. The ALJ complied with the Appeals Council's remand order and all applicable regulatory standards. Claimant's assertions to the contrary are without merit.

**2.     *Res Judicata*.**

*Res judicata* only applies to findings and decisions on the merits which become final as a consequence of a claimant's exhaustion of or failure to pursue administrative or judicial review after notice of an adverse decision. Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997), is inapposite. In that case, Ms. Drummond submitted three applications for DIB. In the first, the ALJ determined that she was unable to perform her past relevant work and had an RFC for sedentary work. In the third, the ALJ determined that she could perform her past relevant work and had an RFC for medium work. The Sixth Circuit stated that "the principles of res judicata can be applied against the Commissioner. When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." Drummond, 126 F.3d at 842. The Court concluded that "the second ALJ was bound by the determination that Drummond retained the RFC for sedentary work." Drummond, 126 F.3d at 843. See also Albright v. Commissioner of Social Sec. Admin., 174 F.3d 473 (4th Cir. 1999)(King, Circuit Judge); Lively v. Secretary of HHS, 820 F.2d 1391 (4th Cir. 1987).

ALJ Pietrowicz was not bound in any way by ALJ Costanzo's findings because the Appeals Council vacated ALJ Costanzo's Decision and that Decision did not therefore become final and binding. Claimant's contention that ALJ Pietrowicz was bound by ALJ Costanzo's Decision is without merit.

**3.     Claimant's Entitlement to Disability Benefits on her 50th Birthday.**

Claimant turned 50 on August 9, 2001, well beyond December 31, 1999, the time when she last qualified as insured for disability insurance benefits. She could not therefore have qualified when she turned 50 and became a person approaching advanced age because she did not qualify on or before her date last insured.

## PROPOSAL AND RECOMMENDATION

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court confirm and accept the foregoing findings, **DENY** the Plaintiff's Motion to Remand (Document No. 11.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 12.), **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94

(4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: February 24, 2006.

/s/ R. Clarke VanDervort
R. Clarke VanDervort
United States Magistrate Judge

15